UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| OMEGA LINER COMPANY, INC., | CIV. 18-4105 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE |
| THE MONTE VISTA GROUP, LLC, RICHARD MONTEMARANO, AND RENE QUITTER | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and Motion for More Definite Statement. Doc. 23. For the following reasons, Defendants' motion to transfer venue is granted.

## BACKGROUND

On or around January 9, 2017, Plaintiff, Omega Liner Company, Inc. ("Omega Liner Co."), a South Dakota corporation with its principal place of business in Canton, South Dakota, and The Monte Vista Group ("Monte Vista Group"), a California limited liability company with its principal place of business in San Diego, California, entered into a Purchase and License Agreement ("Agreement") related to the manufacturing and sale of ultra violet cured-in-place pipe ("Pipe Liners"). Doc. 26,¶¶ 1, 2. Under the terms of the Agreement, Omega Liner Co. purchased certain equipment, licensed certain software and intellectual property ("patent license"). Doc. 26-1. Pertinent to the present motions pending before the Court, Paragraph 18.H. of the Agreement, states as follows:

> This Agreement shall be governed by the laws of the State of California (excepting any conflict of laws or provisions which would serve to defeat application of California substantive law). Each of the parties to this Agreement hereby irrevocably and unconditionally: (i) consents to submit to the exclusive jurisdiction of the courts of San Diego County, California for any proceeding arising in connection with this Agreement and each such party agrees not to commence any such proceeding except in such courts, and (ii) waives any objection to the laying of venue of any such proceeding in the courts of San Diego County, California.

1

EACH PARTY, KNOWINGLY AND AFTER CONSULTATION WITH COUNSEL, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, WAIVES ALL RIGHT TO TRIAL BY JURY OF ANY CLAIM ARISING WITH RESPECT TO THIS AGREEMENT OR ANY MATTER RELATED IN ANY WAY THERETO TO THE EXTENT PERMITTED BY LAW.

Doc. 26-1. Execution of the Agreement was expressly conditioned on Omega Liner Co's receipt of a South Dakota Economic Development REDI (Revolving Economic Development and Initiative) Fund Loan. Doc. 26, ¶ 12.

Between approximately November 2016 and January 2017, Plaintiff alleges that defendant Richard Montemarano ("Montemarano"), the managing director of Monte Vista Group, and defendant Rene Quitter, the technology director of Monte Vista Group, with intent of inducing Omega Liner Co. to enter into the Agreement, represented to Omega Liner Co. that it:

a. Had expertise in installing and operating the equipment used to manufacture Piper Liners ("Equipment") subject to the Agreement;
b. Had expertise in manufacturing Pipe Liners;
c. Had expertise in manufacturing 60" Pipe Liners;
d. Had expertise in training third parties in the operation of the Equipment and manufacturing Piper Liners;
e. Had valuable trade secrets and confidential information regarding the Equipment and Pipe Liner manufacturing process; and
f. Would provide Omega Liner Company a "total solution" package for the Equipment.

Doc. 26, ¶ 13. Omega Liner Co. alleges that such representations were false, that Defendants knew or should have known that they were false, and that it reasonably relied on such representations to its detriment. Doc. 26, ¶¶ 13-17. Omega Liner Co. alleges that Monte Vista Group's representations were exposed as being false when representatives from the company spent months at Omega Liner Co.'s manufacturing plant in Canton, South Dakota, assisting Omega Liner Co. in installing the Equipment, training it in operating the Equipment, and aiding it in manufacturing Pipe Liners using the Equipment. Doc. 26, ¶ 17. Plaintiff alleges that the first Pipe Liners produced with the assistance of Monte Vista Group exhibited numerous areas of superficial cracking of the pure resin section above the fiberglass sections, making the Liners unsightly and of questionable structural integrity ("First Liners"). Doc. 26, ¶ 18. Plaintiff alleges that Monte Vista Group did not know what caused the defect or how to prevent similar defects in the future. Doc. 26, ¶ 18.

The First Liners had been produced for a public works project ("Project"). Doc. 26, ¶ 19. Monte Vista Group instructed Omega Liner Co. to stop installing the First Liners on the Project. Doc. 26, ¶ 19. The First Liners were shipped back to Omega Liner Co.'s manufacturing plant in South Dakota and new Pipe Liners, which are alleged to have been produced without Monte Vista Group's input, were manufactured and shipped to the Project. Doc. 26, ¶ 19.

Omega Liner Co. alleges that Monte Vista Group acknowledged that it was responsible for the damages caused by the First Liners and that it would forego royalties under the Agreement until Omega Liner Co. was compensated by Monte Vista Group's insurance and/or waived royalties, but that subsequently, Monte Vista Group requested royalties from Omega Liner Co. Doc. 26, ¶ 20.

On or about April 6, 2018, Omega Liner Co. provided Monte Vista Group with written notice of some of its defaults and alleges that to date, Monte Vista Group has failed and/or refused to cure its defaults. Doc. 26, ¶ 24. Omega Liner Co. is presently manufacturing its own Pipe Liners ("the Omega Liner") at its manufacturing plant in Canton, South Dakota. Doc. 26, ¶ 25. Omega Liner Co. alleges that the Omega Liner was created without the Monte Vista Group's input and without reliance on the Monte Vista Group's methods and technologies. Doc. 26, ¶ 26.

On August 23, 2018, Omega Liner Co. filed a complaint in the United States District Court for the District of South Dakota Southern Division against Monte Vista Group, Montemarano, and Quitter. Doc. 1.

On October, 26, 2018, Defendant filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and motion for more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. Doc. 23. Defendants request that the Court transfer the case to the United States District Court for the Southern District of California, which Defendants argue, is the venue mandated by the forum-selection clause in the Agreement. Doc. 23. Defendants state that they filed their motions to dismiss and motion for more definite statement in order to protect against any future argument that they waived their rights to have these issues heard under Federal Rules of Civil Procedure 12(g)(2). Doc. 24 at 2.

On November 11, 2018, Omega Liner Co. filed an amended complaint and attached thereto is a copy of the Agreement. Doc. 26. In their Amended Complaint, Omega Liner Co. alleges the following claims: 1) intentional misrepresentation/negligent misrepresentation against Monte Vista Group; 2) intentional misrepresentation/negligent misrepresentation against Montemarano and Quitter; 3) breach of contract against Monte Vista Group; 4) breach of fiduciary duty against Monte Vista Group 4) declaratory judgment holding that "the Agreement's exculpatory clauses, including Section 13 and 17 of the Agreement" are "void against public policy in light of [Monte Vista Group's] fraudulent, reckless, and grossly negligent conduct and the breach of its fiduciary duties owed to [Omega Liner Co.]"; 5) a declaratory judgment holding that the Agreement's forum-selection and jury-waiver provisions are invalid because a) they were included in the Agreement in furtherance of Monte Vista Group's fraudulent conduct and b) the forum selection provision is unreasonable given the location of the parties, the place, execution and performance of the contract, and the location of the parties and witnesses involved in the litigation; and 6) a declaratory judgment holding that Omega Liner Co. does not infringe and has not infringed on Monte Vista Group's '364 Patent and '605 Patent by making, using, selling, or offering to sell the Omega Liner. Doc. 26, ¶¶ 56-60.

In support of its claims for breach of contract and breach of fiduciary duty, Omega Liner Co. alleges that it was falsely told by Monte Vista Group that: 1) Monte Vista Group had all the test results it would need to enter relevant markets; (2) that Omega Liner Co.'s manufacturing plant needed to be operational to provide a circular sample for testing; 3) that the issues with the First Liner were the fault of the resin supplier. Doc. 26, ¶ 21. Plaintiff alleges other problems with the Equipment and with the services provided by Defendants. Doc. 26, ¶ 21.

The motions pending before the Court have been fully briefed by the parties.

## LEGAL STANDARD

Title 28, Section 1404(a) of the United States Code states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v.*

4

*Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). The Eighth Circuit has "declined to offer a 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l*, 119 F.3d at 691). Instead, district courts considering a motion to transfer under § 1404(a), "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. of the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

Parties seeking to transfer an action to enforce a forum selection clause must do so using either § 1404(a) or the doctrine of *forum non conveniens*. *BH Services Inc. v. Fce Benefit Adm'rs Inc.*, Civ. No. 16-5045, 2017 WL 3635186, at *3 (Aug. 23, 2017) (J. Schrier) (citing *Atl. Marine*, 571 U.S. at 59-60). Both § 1404(a) and the doctrine of *forum non conveniens* require courts to employ an identical analysis, with the exception that a motion to transfer under § 1404(a) does not require dismissal of the suit. *Id.* (citing *Atl. Marine*, 571 U.S. at 60 ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer. . . . [C]ourts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.")).

When the parties have agreed to a valid forum-selection clause, the § 1404(a) analysis is altered in three ways. *Atl. Marine*, 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, a district court may not consider arguments about the parties' private interest, but public-interest factors only. *Id.* at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

## DISCUSSION

As stated above, Defendants have moved to transfer this case to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a) in order to enforce the forum-selection clause in the Agreement. Paragraph 18.H. of the Agreement, states as follows:

> This Agreement shall be governed by the laws of the State of California (excepting any conflict of laws or provisions which would serve to defeat application of California substantive law). Each of the parties to this Agreement hereby irrevocably and unconditionally: (i) consents to submit to the exclusive jurisdiction of the courts of San Diego County, California for any proceeding arising in connection with this Agreement and each such party agrees not to commence any such proceeding except in such courts, and (ii) waives any objection to the laying of venue of any such proceeding in the courts of San Diego County, California. EACH PARTY, KNOWINGLY AND AFTER CONSULTATION WITH COUNSEL, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, WAIVES ALL RIGHT TO TRIAL BY JURY OF ANY CLAIM ARISING WITH RESPECT TO THIS AGREEMENT OR ANY MATTER RELATED IN ANY WAY THERETO TO THE EXTENT PERMITTED BY LAW.

In opposition, Plaintiff argues that transfer pursuant to § 1404(a) is improper because the forum selection clause does not establish jurisdiction in any federal district, but rather establishes jurisdiction in state court in San Diego County, California. Plaintiff argues that the Agreement's use of the phrase "the courts *of* San Diego County" instead of phrase "the courts *in* San Diego County" specifies jurisdiction in the Superior Court of California-San Diego County and does not refer to jurisdiction in any federal court. Doc. 27 at 6-9. Plaintiff contends that because the Agreement does not point to a particular federal district, "there is no applicable agreement as to forum," and the court must conduct a typical § 1404(a) analysis, "'evaluating both the convenience of the parties and the various public-interest considerations.'" Doc. 27 at 9 (quoting *BH Servs. Inc.*, 2017 WL 3635186). In doing so, Plaintiff contends that the convenience of the parties and public-interest considerations weigh against transferring this case to the Southern District of California.

In reply, Defendants contend that the phrase "the courts of San Diego County, California" should be construed to include jurisdiction of the Federal District Court in San Diego County. Should the Court conclude that the forum selection clause at issue requires exclusive jurisdiction and venue in California state courts in San Diego County, Defendants argue that venue in the District of South Dakota, Southern Division, is improper and accordingly moves the Court to dismiss the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Doc. 29 at 6.

### A. Choice of Law

In the present case, the Court's jurisdiction is premised on diversity of citizenship. Plaintiff's complaint may also, although the Court does not decide at this time, present a federal

question. Plaintiff's claim requesting a declaratory judgment holding that the Omega Liners do not infringe on Monte Vista Group's patents may arise under federal patent law.

Defendants argue that federal law applies to the Court's determination of whether or not the form selection clause at issue in this case is enforceable and Plaintiff does not contest that assertion. With regard to interpretation of the forum selection clause, Defendants cite to California law whereas Plaintiff has cited to various federal law cases in support of its interpretation of the forum selection clause.

Courts recognize a distinction between the *enforceability* and *interpretation* of a forum selection clause. *M. Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017) ("The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause."); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). "Issues of contract interpretation are considered 'quintessentially substantive,' rather than procedural, under *Erie*." *Mary Kay, Inc.*, 974 F.3d at 182; *Martinez*, 740 F.3d at 220 ("Contract law—including the rules governing contract interpretation—is quintessentially substantive for *Erie* purposes[.]"); *see Weber*, 811 F.3d at 770-71; *Martinez*, 740 F.3d at 220. "Therefore, as a general rule in diversity cases, courts should apply state contract law to decide interpretation questions." *Mary Kay, Inc.*, 974 F.3d at 182.

In contrast, although the Eighth Circuit has "yet to adopt a definitive position on this issue," *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (citation omitted), courts have generally treated questions regarding *enforcement* of a forum selection clause as essentially procedural, rather than substantive, in nature and have thus applied federal law in diversity cases to questions of enforcement. *Mary Kay, Inc.*, 874 F.3d at 182 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995));

Having established that state contract law, rather than federal common law, governs the interpretation of the forum selection clauses here, the Court must now determine which state's contract law applies. Some courts have held that interpretative questions—questions about the meaning and scope of a forum selection clause—are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause. *Martinez*, 740 F.3d at 224. In the present case, the Agreement states that is shall be construed according to the laws of the State of California. Other courts sitting in diversity, however, citing to the Supreme Court's decision in *Klaxon Co. v.*

7

*Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941), apply the forum state's choice-of-law rules to determine which state's substantive law to apply to interpret a forum selection clause. *Weber*, 811 F.3d at 770-71 ("[T]he presence or absence of a specific choice-of-law clause does not alter the core obligation of a federal court, sitting in diversity, to ascertain which body of substantive law to apply by implementing the choice-of-law rules of its home jurisdiction."); *H&R Block Tax Servs. LLC v. Franklin*, 691 F.3d 91 (8th Cir. 2012); *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595-96 (8th Cir. 2007) (applying forum state's choice-of-law rules in a diversity case arising out of the breach of a contract that contained a choice-of-law provision); *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (applying Pennsylvania's choice-of-law rules in diversity case, despite the presence of choice-of-law selecting Illinois law). In *Klaxon*, the Supreme Court held that a federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply. *Klaxon*, 313 U.S. at 496-97.

"South Dakota applies the provisions of the Restatement (Second) of Conflicts of Laws in order to resolve questions about which state's laws govern in particular factual situations." *Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001) (quoting *Stockmen's Livestock Exch. v. Thompson*, 520 N.W.2d 255, 257 (S.D. 1994)). Section 187 of the Restatement explains that a choice of law clause in a contract will be enforced unless

> [A]pplication of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

§ 187(2) Restatement (Second) of Conflict of Laws; *see also Black Hills Truck & Trailer, Inc. v. Mac Trailer Mfg., Inc.*, Civ. No. 13-4113, 2015 WL 8483353 (D.S.D. Dec. 9, 2015) (J. Schrier) (citing Restatement).

In South Dakota, "[t]he primary sources for declarations of . . . public policy . . . are the constitution, statutory law, and judicial decisions." *State ex rel. Meierhenry v. Spiegel, Inc.*, 277 N.W.2d 298, 300 (S.D. 1979). Plaintiffs do not argue that the forum selection clause at issue in this case is contrary to the public policy of South Dakota and the Court finds that South Dakota does not have a materially greater interest than California in interpreting the forum selection clause at issue in this case.

8

For the foregoing reasons, the Court concludes that California law governs the interpretation[1] and federal common law[2] governs the enforceability of the forum selection clause at issue in this case.

### B. Interpretation of Forum Selection Clause

"'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 145 P.3d 472, 476 (Cal. 2006). Such intent is to be inferred, if possible, solely from the written provisions of the contract. *Id.* (citing Cal. Civ. Code § 1639). "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *Claxton v. Waters*, 96 P.3d 496, 504 (J. Brown concurring and dissenting) (quoting Cal. Civ. Code, § 1644). "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promise understood it." *Id.* (quoting Cal. Civ. Code, §1649). Moreover, a "contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." *Id.* (quoting Cal. Civ. Code, § 1647). Thus, "[a]n ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." *Id.* (citing *Solis v. Kirkwood Resort Co.*, 94 Cal.App.4th 354, 360, 114 Cal.Rptr.2d 265 (2001)). And, if an ambiguity exists, extrinsic evidence may be admitted in "interpreting the contract." *Id.* (quoting *Winet v. Price*, 4 Cal.App.4th 1159, 1165, 6 Cal.Rptr.2d 554 (1992)).

The forum selection clause in this case states that the parties "consent[] to submit to the exclusive jurisdiction of the courts of San Diego County, California." The Court finds that the plain meaning of this language is ambiguous in that it does not specify whether jurisdiction is

---

[1] *See also, Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (applying state law to construe whether forum selection clause was "mandatory")

[2] The Court notes that Plaintiff does not appear to dispute Defendant's argument that the standard found in *M.S. Bremen v. Zapata Off-Shore Co.*, 407 US. 1 (1972) is applicable to determine the enforceability of the forum selection clause. "When neither party has challenged the applicability of federal law to the issue and assume that federal law applies, it is not error for the court to apply federal law in reviewing the enforceability of the forum selection clause." *Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc.*, Civ. No. 13-4113, 2014 WL 12768809 (D.S.D. Apr. 14, 2014) (J. Schreier) (citing *Union Elec. Co. v. Energy Ins. Mut Ltd.*, 689 F.3d 968, 971 (8th Cir. 2012)).

limited to state courts located in San Diego County, California. The ambiguity is even more apparent given there are both federal and state courts located in San Diego County, California.[3]

The Court does not find, considering the subject matter of the Agreement, that it can be reasonably inferred that the parties intended to limit jurisdiction to state court in San Diego County, California. The Agreement provides that Plaintiff was to pay certain royalties to Defendants for the purchase of not only equipment, but also for the license of certain software and patented technology. Certainly, the parties anticipated at the time of contracting that if Plaintiff failed to pay royalties for its licensing of the patented technology and continued its use, that Defendants could have a cause of action for patent infringement. In the present case, Plaintiff asserts a federal claim for non-infringement. Construing the language of the forum selection clause, as Plaintiff argues, to exclude the federal district court located in San Diego County, California, would mean that only certain disputes arising in connection with the Agreement are subject to the parties' forum selection clause. This appears contrary to the parties' intent given that the language of the forum selection clause in this case applies to "any proceeding arising in connection with [the] Agreement."

Accordingly, in looking at the language of the Agreement as a whole and the subject-matter of the Agreement, the Court concludes that the forum selection clause encompasses both federal and state court in San Diego County, California. Transfer pursuant to § 1404(a) to the United States District Court for the Southern District of California is thus warranted unless the Court finds that the forum selection clause is invalid, unjust, or unreasonable.[4]

### C. Validity of Forum Selection Clause

"'Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid.'" *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006). "A contractual choice-of-forum clause should be held unenforceable if enforcement would

---

[3] The Southern District of California comprises the counties of San Diego and Imperial. Doc. 29 at 4 (citing 28 U.S.C. § 84(d)).
[4] Defendants state in its brief that the language of the forum selection clause is mandatory, *see Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997); that the forum-selection clause applies to the claims asserted by Plaintiffs, Doc. 24 at 12; and that Montemarano and Quitter are "closely-related" to the dispute and are thus bound by the forum selection clause, *Marano Enters. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757-58 (8th Cir. 2001), Doc. 24 at 11. While these are issues of contract interpretation, Plaintiff does not appear to take issue with Defendants' arguments on these points.

contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." *M.S. Bremen v. Zapata Off-Shore Co.*, 407 US. 1, 15 (1972). If a forum selection clause is valid, the party seeking to litigate in a forum other than that negotiated in the clause "bears an especially 'heavy burden of proof' to avoid its bargain." *Servewell*, 439 F.3d at 789 (quoting *Bremen*, 407 U.S. at 17). Inconvenience to a party is insufficient to invalidate a forum selection clause, but a party may avoid enforcement of that clause if it would, for all practical purposes, deprive a litigant of its day in court. *Union Elec. Co.*, 689 F.3d at 974.

"A 'forum selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.'" *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)) (emphasis in original). However, fraud must be pled with particularity. *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). General allegations of fraud in the inducement are insufficient to raise an issue that the forum-selection clause may be unenforceable because of fraud. *Marano Enters.*, 254 F.3d at 757.

In the present case, Plaintiff alleges that the Agreement's forum-selection and jury-waiver provisions are invalid because 1) they were included in the Agreement in furtherance of Monte Vista Group's fraudulent conduct; and 2) the forum selection provision is unreasonable given the location of the parties, the place, execution and performance of the contract, and the location of the parties and witnesses involved in the litigation. Nowhere in the complaint does Plaintiff include any facts to state a claim that the forum selection clause was a product of fraud or coercion and any inconvenience to Plaintiff in litigating its claims in California was foreseeable at the time it executed the Agreement. Accordingly, the Court concludes that the forum selection clause at issue in this case is valid.

### D. Enforceability of Forum Selection Clause

As stated above, when a valid forum selection clause exists, the plaintiff's choice of forum merits no weight and the plaintiff has the burden of establishing that enforcement of the clause is unwarranted. *Atl. Marine*, 571 U.S. at 63. Rather than giving attention to any private party's interest, a court considering enforcement of a forum-selection clause is to focus on "public-interest factors only." *Id.* at 64. These "public-interest factors" may include the "the administrative difficulties flowing from court congestion; the local interest in having localized controversies

decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 63 n.6. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. Plaintiff does not argue that the public interest factors weigh against transfer. Transfer is further warranted because the Southern District of California would arguably be more familiar with applying California law in accordance with the parties' agreed upon choice-of-law provision.

While Plaintiff states that its witnesses, files and records are located in South Dakota, Plaintiff has not established that litigation in California would, for all practical purposes, deprive it of its day in court. *Union Elec. Co.*, 689 F.3d at 974. Although Plaintiff contends that a visit to the plant would be helpful for the jury to understand the issues in dispute, this proposition was not developed and "[i]t is seldom that an on-site examination is warranted and no basis for such an examination of the plant in [South Dakota] was shown." *Bell Inc. v. Drent Goebel USA, Inc.*, Civ. No. 08-4192, 2009 WL 2634036, at *3 (D.S.D. Aug. 24, 2009). The Court finds no other public interest factors that would weigh against transferring this case to the Southern District of California.

Accordingly, it is hereby ORDERED that:

1) Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), Doc. 23, is GRANTED; and

2) Pursuant to 28 U.S.C. § 1404(a), this case shall be transferred to the United States District Court of the Southern District of California; and

3) Defendants' Motion to Dismiss and Defendants' Motion for More Definite Statement, Doc. 23, are DISMISSED WITHOUT PREJUDICE.

Dated this 16th day of September, 2019.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK
*[signature]*