1
2
3
4
5
6
7
8

9          **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  OMEGA LINER COMPANY, INC.,          Case No. 19-cv-01771-BAS-AGS

                          Plaintiff,   **ORDER GRANTING**
13                                      **DEFENDANT MONTE VISTA'S**
                                        **MOTION TO DISMISS**
14       v.
                                        **[ECF No. 56]**
15  THE MONTE VISTA GROUP,
    LLC, RICHARD
16  MONTEMARANO, and RENE
    QUITTER,
17
                          Defendants.
18

19         Plaintiff Omega Liner Company, Inc. ("Omega") commenced this diversity

20  action against Defendants The Monte Vista Group, Richard Montemarano

21  (Managing Director of Monte Vista), and Rene Quitter (Technology Director of

22  Monte Vista).   Omega brings causes of action for intentional misrepresentation,

23  negligent misrepresentation, breach of contract, and breach of fiduciary duty against

24  Defendant Monte Visa and for intentional and negligent misrepresentation against

25  Defendants Montemarano and Quitter.  ("SAC," Second Amended Complaint, ECF

26  No. 53.)  Monte Vista moves for dismissal of Omega's breach of fiduciary duty cause

27  of action. ("Mot." ECF No. 56.)  Omega filed an opposition to the Motion ("Opp'n,"

28  ECF No. 63) to which Monte Vista replied ("Reply," ECF No. 65).  The Court finds

1  this Motion suitable for determination on the papers and without oral argument.  Civ.

2  L. R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS** Defendant Monte

3  Vista's Motion.

4  **I.      FACTUAL BACKGROUND**

5       On January 9, 2017, Omega and Defendants entered into a Purchase and

6  License Agreement (hereinafter, the "Agreement").  (ECF No. 53-1.)  Under the

7  Agreement, Omega agreed to sell and service manufacturing equipment for

8  ultraviolet cured-in-place pipe to Monte Vista.  (*Id*. §§ 1–2.)  In return, Monte Vista

9  agreed to license certain rights to Omega.   (*Id*. §§ 12, 14.)

10      Pursuant to the terms of the Agreement, Omega constructed a cured-in-place

11  pipe liner manufacturing plant in South Dakota.  (SAC ¶ 12.)  Monte Vista visited

12  Omega's plant to assist with installing the equipment and to train Omega in operating

13  the equipment.  (*Id*. ¶ 14.)  The first pipe liners produced during this site visit were

14  defective.  (*Id*. ¶ 15.)  Specifically, Omega alleges the pipe liners "exhibited

15  numerous areas of superficial cracking of the pure resin section above the fiberglass

16  sections, making the Liners unsightly and of questionable structural integrity." (*Id*.)

17  Omega alleges Monte Vista's training and methodology were the cause of the

18  defective liners. (*Id*. ¶¶ 17, 18.c.)  Monte Vista instructed Omega to cease installation

19  of the defective liners on its client's public works project. (*Id*. ¶ 16.)  The defective

20  liners were shipped back to Omega's manufacturing plant, and new liners were

21  produced without Monte Vista's input and shipped to the project, resulting in a delay

22  of the project. (*Id*.)  Omega alleges that Monte Vista acknowledged its responsibility

23  for the defective liners and agreed to "forego royalties under the Agreement until

24  [Omega] was compensated by [Monte Vista's] insurance and/or waived royalties."

25  (*Id*. ¶ 17.)  Monte Vista allegedly "reneged on this offer and recently demanded

26  royalties from" Omega.  (*Id*.)  Omega alleges that Monte Vista's actions constitute

27  "breaches of contract, breaches of fiduciary duty, lack of expertise, lack of

28  knowledge, and general incompetence."  (*Id*. ¶ 18.)

Omega alleges the Agreement "created a relationship under which . . . each [company] contributed capital, time, and skill with the expectation of sharing in the profits of their joint enterprise." (*Id*. ¶ 42.)  Omega alleges that "the parties agreed to split the profits in accordance with a [set] formula." (*Id*. ¶ 41.)  Omega alleges Monte Vista breached its fiduciary duty to Omega by "failing to exercise reasonable care and failing to give priority to [Omega's] best interests." (*Id*. ¶ 43.)  As a result of Monte Vista's breach of its duty, Omega states it has suffered damages. (*Id*. ¶ 44.)

## II.   LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "A claim has facial plausibility when the Omega pleads factual content that allows the court to draw the reasonable inference that the Monte Vista is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  However, the court is not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Nor must the court accept allegations in the complaint that are contradicted by documents the complaint references. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A Rule

12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III.   ANALYSIS

Monte Vista moves to dismiss only Omega's breach of fiduciary duty cause of action.   In analyzing Monte Vista's motion, the Court may consider the Agreement, which is attached to the complaint.   *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion).   Omega also attached to its Opposition an exhibit to the Agreement.[1]   Before turning to the merits of Monte Vista's Motion, the Court must determine whether it may consider this exhibit.

### A.   <u>Incorporation by Reference</u>

Courts usually may not consider material outside the complaint when ruling on a motion to dismiss.   *Id.*   However, the "incorporation by reference" doctrine permits the court "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"   *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).   To be incorporated, the document must be referred to extensively in the complaint or it must form the basis of the plaintiff's claim.   *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).   When the court incorporates documents by reference, the court treats the documents "as though they are a part of the complaint itself."   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).   A court "may assume [an incorporated document's] contents are true for purposes of a

---

[1] It is not evident to the Court why Omega neglected to attach this portion of the Agreement to its Complaint.

1  motion to dismiss under Rule 12(b)(6)." *Id*. at 1003 (quoting *Mardez v. Lopez*, 450
2  F.3d 445, 448 (9th Cir. 2006)) (alteration in original).

3       Omega attached to its Opposition Exhibit E of the Agreement—the "Patent
4  License." ("Patent License," ECF No. 63-2.)  The Patent License is only mentioned
5  three times in Omega's complaint.  (*See* SAC ¶¶ 8 n.1, 17, 41–42.)  Thus, it cannot
6  be said that the document is referred to "extensively."  *See Ritchie*, 342 F.3d at 907–
7  08.  However, Omega relies on the Patent License to demonstrate the existence of an
8  alleged fiduciary duty between itself and Monte Vista.   (SAC ¶¶ 41–42.)
9  Specifically, Omega states that the Agreement and Patent License show the "the
10  parties agreed to split profits in accordance with a formula" and the "Agreement
11  created a relationship under which [Monte Vista and Omega] each contributed
12  capital, time, and skill with the expectation of sharing in the profits of their joint
13  enterprise." (*Id*.; Opp'n at 3.)  Because the Patent License is an integral part of the
14  Agreement and Omega relies on the documents to form a claim, the Court may
15  incorporate the Patent License by reference.  No party questions the document's
16  authenticity.  Therefore, the Court considers the contents of the Patent License when
17  ruling on Monte Vista's motion to dismiss.

18      **B.**   <u>**Fiduciary Duty**</u>

19       Monte Vista moves to dismiss Omega's claim for breach of fiduciary duty
20  because it argues there is no fiduciary relationship between the two parties.

21       To plead a claim for breach of fiduciary duty, the claimant must allege (1) the
22  existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that
23  duty, and (3) damage proximately caused by the breach.  *People ex rel. Harris v.*
24  *Rizzo*, 214 Cal. App. 4th 921, 950 (2013).  The existence of a fiduciary duty is a
25  question of law.  *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 982
26  (2015) (citing *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582 (2008)).
27  But whether a fiduciary relationship exists is a question of fact.   *Michelson v.*
28  *Hamada*, 29 Cal. App. 4th 1566, 1575–76 (1994).

Ordinarily, a contract alone does not create a fiduciary relationship.  *Rickel v. Schwinn Bicycle Co.*, 144 Cal. App. 3d 648, 654 (1983); *Waverly Prods., Inc. v. RKO Gen., Inc.*, 217 Cal. App. 2d 721, 732 (1963).  For such a relationship to exist, something more must be present.  One way to establish the existence of a fiduciary relationship giving rise to a duty is by "pleading the existence of partnership or joint venture."  *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 979 (N.D. Cal. 2015). Plaintiff argues that the "Agreement created a relationship under which [Monte Vista] and [Omega] each contributed capital, time, and skill with the expectation of sharing in the profits of their joint enterprise."  (SAC ¶ 42.)

A joint venture is defined as "an association of two or more persons who combine their property, skill or knowledge to carry out a single business enterprise for profit."  *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506 (1957). Whether a joint venture has been formed depends on the intention of the parties at the time of the agreement.  *Id*.  The intent of the parties should be determined by the terms of the agreement.  *Constans v. Ross*, 106 Cal. App. 2d 381, 386 (1951).  A contract need not explicitly refer to the relationship as a joint venture if the parties' acts and declarations make their intentions clear.  *See Holtz*, 49 Cal. 2d at 507.  The factors that courts look to in determining whether a joint venture has been established include community or ownership interest in the business, an equal right to control and manage the business, a share in the profits and losses, and a close relationship between the parties.  *See Unruh-Haxton v. Regents of Univ. of Cal.,* 162 Cal. App. 4th 343, 370 (2008); *Buck v. Standard Oil Co.*, 157 Cal. App. 2d 230, 239 (1958).

Here, the Agreement makes no mention of a joint venture.  The primary purpose of the Agreement was for Omega to purchase equipment, services, and software and patent license agreements from Monte Vista.  (*See* Agreement § 1.) The Agreement resembles a typical purchase and licensing agreement.  Although the Agreement indicates that Monte Vista agreed to contribute its property and services in exchange for Omega's valuable consideration, it makes no mention of profit or

loss sharing.  (*Id.*)  The Patent License only requires Omega to pay Monte Vista quarterly royalties based on net sales.  (Patent License § 6.1.)  The license defines "Net Sales" as:

> the amount received for the sale of Products by [Omega] less (a) amounts repaid or credited by reason of return or rejection, (b) price allowances, commissions, and discounts actually allowed and taken; (c) rebates, reimbursements, fees, taxes or similar payments; and (d) reasonable charges for storage, delivery, transportation, shipping and packing to the extent included as a separate line item in the gross amount billed or invoiced.

(*Id.* § 1.18.) Neither the Agreement nor the Patent License specify if Monte Vista receives royalties on all products sold by Omega or only on products that use Monte Vista's equipment or licenses.  Nevertheless, a profit-sharing agreement alone is not enough to create a partnership or joint venture.  *Bank of Cal. v. Connolly*, 36 Cal. App. 3d 350, 364 (1973).  Similarly, a contractual duty to receive royalties is not sufficient to give rise to a fiduciary relationship.  *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1040 (C.D. Cal. 2003).  To form a joint venture, the parties must also manage the business jointly.  *Dickenson v. Samples*, 104 Cal. App. 2d 311, 315 (1951); *cf. Bank of Cal.*, 36 Cal. 3d at 364 ("An essential element of a partnership or joint venture is the right of joint participation in the management and control of the business.").

No terms of either the Agreement or the Patent License indicate joint management and control of a business.  This Agreement appears to be nothing more than a standard contract.  Accordingly, a joint venture has not been created.  Omega has not pled the existence of a fiduciary relationship, thus it cannot plead a breach of fiduciary duty.

## IV.    CONCLUSION

Omega has failed to state a claim upon which relief can be granted.  Therefore, the Court **GRANTS** Defendant's Monte Vista's Motion to Dismiss Omega's breach of fiduciary duty claim.  The Court finds that Omega is unable to amend its complaint

to plead the existence of a fiduciary relationship, thus, the dismissal is with prejudice. Monte Vista is to file an answer as to the remaining causes of action <u>on or before May 29, 2020</u>.  Finally, as ordered by Magistrate Judge Schopler, within 5 days of the date of this order, the parties must contact Judge Schopler to set a further Case Management Conference.  (*See* ECF No. 72.)

**IT IS SO ORDERED.**

**DATED: May 13, 2020**

**Hon. Cynthia Bashant**
**United States District Judge**